**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MAGALE NARCE, | |
| Plaintiff, | Civil Action No. 23-200 (BAH) |
| v. | Judge Beryl A. Howell |
| HARDY MERVILUS *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

Plaintiff Magale Narce initiated this ten-count action against three Metropolitan Police Department ("MPD") officers, Hardy Mervilus, John Dobbins, and Christopher Christian (jointly, "Officer Defendants"), and the District of Columbia, alleging that the Officer Defendants stopped, searched, and arrested him without probable cause, in violation of the Fourth Amendment and D.C. common law. *See* Am. Compl., ECF No. 11. He also brings several First Amendment claims: that D.C.'s Panhandling Control Act (the "Act"), D.C. Code § 22-2302, violates the First Amendment both on its face and as applied to him, and that his arrest was retaliatory. Defendants moved to dismiss the Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Defs.' Mot. to Dismiss, ECF No. 18; Defs.' Mem. Supp. Mot. to Dismiss ("Defs.' Mem."), ECF No. 18-1. For the reasons below, the motion is denied.

I.      **BACKGROUND**

Summarized below is background on the District of Columbia law at issue, as well as the factual allegations and procedural history in this case.

A.        The Panhandling Control Act

Enacted on November 19, 1993, the Panhandling Control Act, D.C. Code § 22–2301 *et seq.*, sought to combat "'growing problems related to the homeless' as well as panhandlers who 'are in fact not homeless, but instead are confidence operators, who prey on the elderly and tourists who are uncertain about the genuine needs of the panhandler.'"  *McFarlin v. District of Columbia*, 681 A.2d 440, 445 (D.C. 1996) (quoting Council of the District of Columbia, Report of the Committee on the Judiciary on Bill 10-72, the Panhandling Control Act of 1993, at 2 (May 12, 1993)).  In relevant part, the Act provides:

> No person may ask, beg, or solicit alms, including money and other things of value, in an aggressive manner in any place open to the general public, including sidewalks, streets, alleys, driveways, parking lots, parks, plazas, buildings, doorways and entrances to buildings, and gasoline service stations, and the grounds enclosing buildings.

D.C. Code § 22-2302(a).  The Act defines "[a]ggressive manner" as:

> (A) Approaching, speaking to, or following a person in a manner as would cause a reasonable person to fear bodily harm or the commission of a criminal act upon the person, or upon property in the person's immediate possession;
> (B) Touching another person without that person's consent in the course of asking for alms;
> (C) Continuously asking, begging, or soliciting alms from a person after the person has made a negative response; or
> (D) Intentionally blocking or interfering with the safe or free passage of a person by any means, including unreasonably causing a person to take evasive action to avoid physical contact.

*Id.* § 22-2301(1).  The words "[a]sk, beg, or solicit alms" are defined to include "the spoken, written, or printed word or such other act conducted for the purpose of obtaining an immediate donation of money or thing of value."  *Id.* § 22-2301(2).  A violation of the Act may result in a fine, imprisonment for not more than 90 days, or both.  *Id.* § 22-2304(a).

2

### B.     Factual Background

Plaintiff, an unhoused Black man and lifelong District of Columbia resident, has been performing on the streets of D.C. for fifteen years.  Am. Compl. ¶¶ 9–10.  His street performances, which are often interactive, range from stand-up comedy, dancing, singing, and playing music from portable speakers, and serve as not only a form of therapy but also a significant source of income for plaintiff.  *Id.* ¶¶ 10–12.  To maximize profits, plaintiff prefers to perform in popular locations, such as tourist attractions and outdoor eateries.  *Id.* ¶ 10.

On January 24, 2022, plaintiff, while on a break from making DoorDash food deliveries, stopped his bicycle on the public sidewalk near 7th Street NW and Mt. Vernon Place NW to entertain a crowd waiting to enter the Walter E. Washington Convention Center ("Convention Center") for a car show.  *Id.* ¶ 15.  As part of his performance, he played gospel music, talked to and took song requests from the crowd, and performed comedy; the crowd, in turn, danced and sang along to the music, and some put money in his backpack to pay for his performance.  *Id.* ¶¶ 16–17.  During his performance, plaintiff remained on his bike and on public property and did not impede the entrance to the Convention Center.  *Id.* ¶¶ 15, 18–19.  He was not aggressive in his interactions: he did not approach or follow anyone in a way that might have caused fear, did not touch anyone without their consent, did not beg or solicit money from anyone after being refused, and did not block anyone's path into the Convention Center.  *Id.* ¶ 19.

After nearly half an hour, a Special Police Officer approached plaintiff to ask that he leave.  *Id.* ¶ 21.  Plaintiff refused, informing the officer that his performance was lawful and within his rights.  *Id.* ¶ 22.  Officer Mervilus then approached plaintiff, complimented his music, gave him a few dollars for his performance, and asked him to "do [him] a favor" by moving to a different area; plaintiff again refused.  *Id.* ¶¶ 23–24.  "In response to [plaintiff's] refusal to relocate, Officer Defendants seized [plaintiff] against his will."  *Id.* ¶ 27.  Officer Dobbins

3

"restrained" plaintiff, while Officer Mervilus handcuffed him.  *Id.*  The Officer Defendants "grabbed Mr. Narce's body" and arrested him for aggressive panhandling, in violation of D.C. Code § 22-2302(a).  *Id.*  They then searched plaintiff's person and confiscated his personal property, including his bike, speaker, microphone, ID card, backpack, and money.  *Id.* ¶ 28.

Plaintiff was taken to the Third District MPD Station, where he was fingerprinted, patted down, searched, and incarcerated for approximately three hours before being released.  *Id.* ¶ 31. At the station, a police officer told plaintiff that next time an officer tells him to move, he should "just move."  *Id.* ¶ 34.  When MPD returned plaintiff's property to him, the front wheel of his bike was loosened, and his speaker was damaged.  *Id.* ¶ 35.  The District of Columbia did not prosecute the aggressive panhandling charge, and plaintiff was not required to appear in court. *Id.* ¶ 36.  Due to plaintiff's anxiety and fear of being arrested, however, he stopped performing for approximately three months from February to May 2022.  *Id.* ¶ 37.  When he started his street performances again, he did so in fear of being arrested and so limited his performances to locations where he felt the least at risk, which significantly decreased his income.  *Id.* ¶¶ 37–38.

### C.    Procedural Background

On January 24, 2023, plaintiff brought this action against the Officer Defendants and the District of Columbia.  As amended, the complaint alleges ten counts stemming from the officers' conduct.  Plaintiff brings eight claims against the Officer Defendants for: (1) unlawful seizure or failure to intervene with the unlawful seizure in violation of the Fourth Amendment, pursuant to 42 U.S.C. § 1983, *id.* ¶¶ 40–51 (Counts 1 and 2); (2) unlawful search or failure to intervene with the unlawful search in violation of the Fourth Amendment, also pursuant to 42 U.S.C. § 1983, *id.* ¶¶ 52–63 (Counts 3 and 4); (3) false arrest, in violation of D.C. common law, *id.* ¶¶ 64–69 (Count 5); (4) violating his First Amendment rights by applying the Panhandling Control Act to him, *id.* ¶¶ 85–94 (Count 8); and (5) unlawful retaliation or failure to intervene with the unlawful

retaliation by arresting plaintiff, *id.* ¶¶ 95–110 (Counts 9 and 10).  He also brings two claims against the District of Columbia for: (1) false arrest, in violation of D.C. common law, under the theory of respondeat superior, *id.* ¶¶ 70–73 (Count 6); and (2) promulgating the Panhandling Control Act, which he alleges facially violates the First Amendment, *id.* ¶¶ 74–84 (Count 7).  He seeks declaratory relief, injunctive relief, compensatory damages, nominal damages, and attorneys' fees and costs.  *Id.* (Prayer for Relief).

Defendants have moved to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), which motion is ripe to resolve.

## II.     LEGAL STANDARD

### A.     Rules 8 and 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and "[e]ach allegation must be simple, concise, and direct."  Fed. R. Civ. P. 8(a)(2), (d)(1).  The "short and plain statement" requirement is not stringent.  *See Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Its purpose is "to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Twombly*, 550 U.S. at 555 (alteration in original accepted and citation omitted).

At the same time, to survive a Rule 12(b)(6) motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  A claim is facially plausible when the plaintiff pleads facts that are more than "merely consistent with a defendant's liability" and that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citation omitted); *see also Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) ("Plausibility requires more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).  "[A] complaint survives a motion to

dismiss even if there are two alternative explanations, one advanced by the defendant and the other advanced by the plaintiff, both of which are plausible." *VoteVets Action Fund v. U.S. Dep't of Veterans Affs.*, 992 F.3d 1097, 1104 (D.C. Cir. 2021) (alterations in original accepted and citation omitted).

In deciding a motion under Rule 12(b)(6), a court must consider the whole complaint, accepting all factual allegations in the complaint as true, "even if doubtful in fact," and construing all reasonable inferences in the plaintiff's favor. *Twombly*, 550 U.S. at 555; *see also Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204, 210 (D.C. Cir. 2022). A court, however, does not "accept inferences drawn by a plaintiff if such inferences are unsupported by the facts set out in the complaint." *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (alterations in original accepted and citation omitted); *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). In determining whether a complaint fails to state a claim, a court may consider only the facts alleged in the complaint and "any documents either attached to or incorporated in the complaint and matters of which the court may take judicial notice." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (alterations in original accepted and citation omitted).

### B.    Section 1983 and Qualified Immunity

Section 1983 provides a remedy for an individual who has been deprived, by a person acting under color of state law, of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. A plaintiff may establish a Section 1983 claim in two ways: by showing that the defendant was directly involved or was a bystander to the constitutional violation. *See Wesby v. District of Columbia*, 765 F.3d 13, 29–30 (D.C. Cir. 2014), *rev'd on other grounds*, 583 U.S. 48 (2018); *see also Randall v. Prince George's Cnty.*, 302 F.3d 188, 202–03 (4th Cir. 2002); *Sanchez v. City of Chicago*, 700 F.3d

919, 926 n.3 (7th Cir. 2012). Bystanding officers are liable when they (1) know that another officer is violating an individual's constitutional right; (2) have the reasonable opportunity to prevent the illegal act; and (3) choose not to act. *See Randall*, 302 F.3d at 203–04; *see also Moore v. District of Columbia*, 79 F. Supp. 3d 121, 134–35 (D.D.C. 2015).

In suits brought under Section 1983, "[t]he doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The doctrine "gives government officials breathing room to make reasonable but mistaken judgments" and "protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). In determining whether a government official should be entitled to qualified immunity, the two pertinent questions are (1) "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right," and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (citations omitted). To be "clearly established," a legal principle must be "'settled law,' which means it is dictated by 'controlling authority' or 'a robust consensus of cases of persuasive authority.'" *Wesby*, 583 U.S. at 63 (quoting *al-Kidd*, 563 U.S. at 741–42). "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.*

## III.  DISCUSSION

Plaintiff's claims lend themselves to division into three categories. The first category are the six counts that turn on whether the Officer Defendants had probable cause to arrest plaintiff,

namely: his two Section 1983 claims for false arrest in violation of the Fourth Amendment, Am. Compl. ¶¶ 40–51 (Counts 1 and 2); his two Section 1983 claims for unlawful search in violation of the Fourth Amendment, *id.* ¶¶ 52–63 (Counts 3 and 4); and his two state common law claims for false arrest, *id.* ¶¶ 64–73 (Counts 5 and 6).  The second category consists of his facial and as-applied First Amendment challenges to the Panhandling Control Act.  *Id.* ¶¶ 74–94 (Counts 7 and 8).  The third and final category comprises his two Section 1983 claims for retaliation in violation of the First Amendment.  *Id.* ¶¶ 95–110 (Counts 9 and 10).  Defendants move to dismiss all ten counts for failure to state a claim, and all eight claims against the Officer Defendants, *i.e.*, Counts 1 through 5 and 8 through 10, on the basis of qualified immunity.  The three categories of claims are addressed *seriatim* below.

### A.   Unlawful Arrest and Unlawful Search Claims (Counts 1–6)

Counts 1 through 6 all turn on whether the Officer Defendants had probable cause to arrest plaintiff.  Counts 1 and 2, brought under Section 1983, assert that the Officer Defendants arrested plaintiff without probable cause or watched and failed to intervene as other officers arrested him without probable cause, in violation of the Fourth Amendment.  The federal Constitution requires that an officer effecting an arrest have probable cause to do so.  *See* U.S. Const. amend. IV ("The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ."); *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) ("A warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause.").  Whether an arrest is constitutionally valid thus often turns on whether probable cause existed, *Beck v. Ohio*, 379 U.S. 89, 91 (1964) ("Whether [an] arrest was constitutionally valid depends . . . upon whether, at the moment the arrest was made, the officers had probable cause to

make it . . . ."), and that is the issue here, *see* Defs.' Mem. at 6–7; Pl.'s Opp'n Defs.' Mot.

Dismiss ("Pl.'s Opp'n") at 5, ECF No. 19.

Counts 3 and 4, also brought under Section 1983, contend that the Officer Defendants

conducted an unlawful search or watched and failed to intervene as other officers conducted an

unlawful search because the search was conducted incident to an unlawful arrest—that is, an

arrest without probable cause.  When an individual is legally arrested, the government can

"search the person . . . to discover and seize the fruits or evidences of crime" without a warrant.

*Riley v. California*, 573 U.S. 373, 382 (2014); *see also Chimel v. California*, 395 U.S. 752, 762–

63 (1969) (explaining that the need "to remove any weapons that [an arrestee] might seek to use

in order to resist arrest or effect his escape" and "to search for and seize any evidence on the

arrestee's person in order to prevent its concealment or destruction" are "ample justification" for

"a search of the arrestee's person and the area 'within his immediate control'").  The necessary

predicate to this exception to the warrant requirement, however, is a valid and lawful arrest

supported by probable cause, *see United States v. Wills*, 316 F. Supp. 3d 437, 446 (D.D.C. 2018)

(citing *Chimel*, 395 U.S. at 753), and whether probable cause for the arrest was present here is an

issue the parties dispute, *see* Defs.' Mem. at 12; Pl.'s Opp'n at 13–14; Defs.' Reply Supp. Mot.

Dismiss ("Defs.' Reply") at 6, ECF No. 20.

Counts 5 and 6 allege claims of unlawful arrest and failure to intervene with unlawful

arrest under D.C. common law against the Officer Defendants and likewise against the District

under the theory of respondeat superior.  "The elements of a constitutional claim for false arrest

are substantially identical to the elements of a common-law false arrest claim," and thus

constitutional and common law claims of false arrest generally rise and fall together.  *Scott v.

District of Columbia*, 101 F.3d 748, 753–54 (D.C. Cir. 1996); *see also Tinius v. Choi*, 77 F.4th

691, 705 (D.C. Cir. 2023) ("Constitutional and common law claims of false arrest are generally analyzed as though they comprise a single cause of action." (citation omitted)).  Like federal law, D.C. common law requires that an officer effecting an arrest have probable cause to do so. *District of Columbia v. Minor*, 740 A.2d 523, 531 (D.C. 1999) ("To avoid liability for common law false arrest, a police officer may justify an arrest by demonstrating either (1) that he or she had probable cause to make the arrest or (2) that he or she believed in good faith that the arrest was lawful and that this belief was reasonable."); *see also Scott*, 101 F.3d at 754 ("Most false arrest claims turn on the issue of whether the arresting officer had probable cause to believe that the arrestee committed a crime."); *see also* Defs.' Mem. at 13; Pl.'s Opp'n at 15.  In sum, and as the parties acknowledge, Counts 1 through 6 all turn on the question of probable cause for plaintiff's arrest.

An arrest is supported by probable cause if, at the time of the arrest, "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense."  *Beck*, 379 U.S. at 91; *see also Wesby*, 583 U.S. at 56–57 ("[W]e examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." (quoting *Pringle*, 540 U.S. at 371)).  An officer need not have personally seen the alleged violation; rather, probable cause exists even if an officer "received his information from some person—normally the putative victim or an eye witness—who it seems reasonable to believe is telling the truth."  *Lin v. District of Columbia*, 47 F.4th 828, 841 (D.C. Cir. 2022) (citation omitted).  Such belief need not be "correct or more likely true than false," *Texas v. Brown*, 460 U.S. 730, 742 (1983), and probable cause does not "require the same type of specific

evidence of each element of the offense as would be needed to support a conviction," *Adams v. Williams*, 407 U.S. 143, 149 (1972).  Although "[p]robable cause 'is not a high bar,'" *Wesby*, 583 U.S. at 57 (citation omitted), "more than bare suspicion" is required, *United States v. Vinton*, 594 F.3d 14, 21 (D.C. Cir. 2010) (citation omitted); *see also Lin*, 47 F.4th at 840 ("What is required is a 'substantial chance of criminal activity.'" (citation omitted)).  "Probable cause is a question of law for the court to decide 'where the facts are undisputed.'"  *Tinius*, 77 F.4th at 705 (citation omitted).

"It is hornbook law that, on a motion to dismiss, the court must accept as true the well-pleaded factual allegations in the complaint, and confine its consideration to those allegations." *Doe v. Siddig*, 810 F. Supp. 2d 127, 132 (D.D.C. 2011).  Taking the alleged facts in the Amended Complaint as true, the Officer Defendants lacked probable cause to arrest plaintiff for aggressive panhandling, when he was merely, as alleged, performing on a public sidewalk outside the Convention Center without impeding its entrance or otherwise engaging in an aggressive manner that interfered with pedestrians.  Although the Supreme Court has identified a clear mandate for courts to resolve qualified immunity questions at the earliest possible stage of the litigation, *Pearson*, 555 U.S. at 232, "a warrantless arrest without probable cause is a 'clearly established' constitutional violation," *Turpin v. Ray*, 319 F. Supp. 3d 191, 199 (D.D.C. 2018); *see also Pringle*, 540 U.S. at 369–70.  As explained more fully below, plaintiff's claims of Fourth Amendment unlawful arrest, Fourth Amendment unlawful search, and state law unlawful arrest, under theories of both direct and bystander liability, thus survive defendants' motion to dismiss on grounds of both failure to state a claim and qualified immunity.

1.    <u>Direct Liability</u>

Defendants contend that by plaintiff's "own admission," he alleged that "he was riding his bike close enough to the crowd for people to put money in his backpack," "was playing music loud enough for the crowd to hear," and "was interacting with the large crowd trying to enter the Convention Center."  Defs.' Mem. at 7 (citing Am. Compl. ¶¶ 15–19).  This conduct—in particular, plaintiff's alleged "admi[ssion] that he was riding his bike close enough to the crowd for people to put money in his backpack," Defs.' Reply at 3—defendants contend, falls "squarely under the prohibitions of the Act," Defs.' Mem. at 7.  Defendants also argue that only Officer Mervilus saw plaintiff's performance, whereas Officer Dobbins and Christian were "not present for the interactions that preceded Officer Mervilus's call for backup" and "relied on Officer Mervilus's account of the events to determine that Plaintiff should be arrested for violating the Act."  Defs.' Mem. at 8, 11.

Defendants, however, read facts into the Amended Complaint that are not there.  The Amended Complaint does not allege that plaintiff was riding his bike, much less riding his bike close enough for the crowd to put money in his backpack.  Rather, plaintiff alleges that "Narce, while on his bike, stopped outside the Convention Center," but off Convention Center property, "on the public sidewalk near 7th Street NW and Mt. Vernon Place NW," and that plaintiff "was not impeding the entrance to the Convention Center."  Am. Compl. ¶ 15; *see also* Pl.'s Opp'n at 6.  While alleging that some people in the crowd paid for his performance, the Amended Complaint does not state that plaintiff approached the crowd; the people in the crowd could have just as likely approached plaintiff to put money in his "open" backpack when they wanted to compensate him.  Am. Compl. ¶¶ 15, 17, 19.  This conduct, as alleged, does not rise to "aggressive" panhandling in violation of D.C. Code § 22-2302(a).  Based on the Amended

Complaint, plaintiff did not "[i]ntentionally" block or interfere with the "safe or free passage" of the individuals around him, and none of the factual allegations suggest that any person had "to take evasive action to avoid physical contact" with plaintiff.  D.C. Code § 22-2301(1)(D).[1]

The Amended Complaint, in addition, twice alleges that the "Officer Defendants observed Mr. Narce's performance and conduct."  Am. Compl. ¶ 26; *see also id.* ¶ 21 ("Mr. Narce's legal conduct was known and observable . . . to Officer Defendants.").  To be sure, "additional officers" allegedly arrived at the scene "soon after Mr. Narce's refusal to move," *id.* ¶ 25, but this fact does not necessarily contradict the allegation that Officer Dobbins "observed" plaintiff's busking.  Nowhere does the Amended Complaint say, for example, that Officers Dobbins and Christian were among the "additional officers" who arrived at the scene after plaintiff refused to move, and plaintiff could have continued his performance after he first refused to move.  Plaintiff has alleged that all three Officer Defendants "observed" his conduct, which the alleged facts indicate did not rise to "aggressive" panhandling in violation of D.C. Code § 22-2302(a), and thus, based on the four-corners of the Amended Complaint, none of the three Officer Defendants had probable cause to arrest plaintiff.

---

[1]     Defendants argue that plaintiff's allegations that he did not behave in an "aggressive manner" are "formulaic recitation[s] of the elements of a cause of action" that are "conclusory" and insufficient to "state a claim for relief."  Defs.' Mem. at 7 (first quoting Am. Compl. ¶ 19, then quoting *Iqbal*, 556 U.S. at 678); *see also* Defs.' Reply at 2 ("This is mere repetition of the statutory definition of aggressive panhandling.").  To be sure, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (citation omitted).  *Iqbal*, however, does not stand for the proposition that a plaintiff can never use language from the operative statute, or that whenever a plaintiff does quote from a statute, this language should be ignored.  Rather, *Iqbal* explains that a complaint is insufficient "if it tenders 'naked assertions' devoid of 'further factual enhancement.'"  *Id.* (alteration in original accepted and citation omitted).  Here, plaintiff's allegation that he did not "block or interfere with anyone's passage to or from the Convention Center," Am. Compl. ¶ 19, is not a "label[]," "conclusion," or "naked assertion."  Even setting aside that there are only so many ways of saying that plaintiff did not "block or interfere with anyone's passage," the complaint provides further factual allegations to support this statement, alleging, for example, that plaintiff was "outside the Convention Center on the public sidewalk near 7th Street NW and Mt. Vernon Place NW," a location that did not "imped[e] the entrance to the Convention Center," did not "approach," "follow," or "touch" anyone without their consent, and remained "on his bike," which was "stopped," and "on public property throughout his performance."  Am. Compl. ¶¶ 15–19.

With respect to the claims against Officer Christian, defendants further contend that plaintiff has "failed to allege that Defendant Officer Christian participated in Plaintiff's arrest," in violation of Rule 8. Defs.' Mem. at 9; *see also id.* at 10 (arguing that the complaint alleges only "general statements" that "do not show that Officer Christian's '*own individual actions*' violated Plaintiff's Fourth Amendment rights" (emphasis in original) (citation omitted)). While not identifying any specific act that Officer Christian performed, the Amended Complaint alleges that the "Officer Defendants seized Mr. Narce against his will," "grabbed Mr. Narce's body," "arrested Mr. Narce," and "searched Mr. Narce's person and confiscated his personal property," while "continuing to restrain Mr. Narce in handcuffs." Am. Compl. ¶¶ 27–28. The precision defendants demand as to which officer did what and when at this stage of the lawsuit is not required. To the contrary, "an arrestee's inability to positively identify those who allegedly violated his rights is not *per se* fatal to his claims," as "it is not reasonable to expect the Plaintiff to be able to provide a detailed, blow-by-blow recitation of who did what and when." *Robinson v. Farley*, 264 F. Supp. 3d 154, 160–61 (D.D.C. 2017) (Brown Jackson, J.) (alterations in original accepted and citations omitted).[2] This principle carries particular force at the motion to dismiss stage. *Id.* at 162. Plaintiff has thus plausibly alleged that Officers Mervilus, Dobbins, and Christian each observed plaintiff's street performance and were directly involved in

---

[2] The cases cited by defendants are unpersuasive. *See* Defs.' Mem. at 9–10. In *Rodriguez v. Gay*, No. 14-cv-2033, 2014 WL 6853639 (D.D.C. Nov. 25, 2014), the court dismissed, pursuant to Rule 8, a suit brought by a pro se plaintiff "based on vague accusations about 'malfeasance of office' and the use and acceptance of false documents," *id.* at *1. In *Hilska v. Jones*, 217 F.R.D. 16 (D.D.C. 2003), the court dismissed, pursuant to Rule 8, claims brought by a pro se plaintiff against a federal defendant who was named "in the complaint's caption" but was not mentioned anywhere else in the complaint, not implicated in "any of the complaint's allegations," and not mentioned in the plaintiff's opposition to defendants' motion to dismiss, *id.* at 24. Here, the allegations as to Officer Christian are not "so unclear that the opposing party cannot respond to the complaint." *Id.* (citation omitted). For the same reasons, defendants' argument that plaintiff's unlawful search claim fails because "[p]laintiff identifies none of the Officer Defendants' 'individual actions' allegedly involved in the search" is unpersuasive. Defs.' Mem. at 11 (citation omitted).

plaintiff's arrest without probable cause, and Counts 1, 3, and 5 survive defendants' motion to dismiss.

>        2.        Bystander Liability

Rule 8(d)(2) provides that "[a] party may set out 2 or more statements of a claim . . . alternatively or hypothetically, either in a single count . . . or in separate ones."  Fed. R. Civ. P. 8(d)(2).  As defendants eventually concede, Rule 8(d)(2) thus permits plaintiff to bring claims for direct liability or, in the alternative, bystander liability.  *See* Defs.' Reply at 6; *see also, e.g.*, *Matthews v. District of Columbia*, 730 F. Supp. 2d 33, 38–39 (D.D.C. 2010); *Fernandors v. District of Columbia*, 382 F. Supp. 2d 63, 72 (D.D.C. 2005).

Rule 8(d)(2) further states that "[i]f a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."  Fed. R. Civ. P. 8(d)(2).  As explained above, plaintiff has adequately alleged that Officers Mervilus, Dobbins, and Christian arrested plaintiff without probable cause, and thus plaintiff's claims against defendants for unlawful arrest and unlawful search under the Fourth Amendment and D.C. common law may proceed on a direct liability theory.  Under Rule 8(d)(2), plaintiff's claims for unlawful arrest and unlawful search under a bystander liability theory are thus also "sufficient."  Specifically, plaintiff has plausibly alleged that all three Officer Defendants were involved in seizing, restraining, arresting, and searching him, but to the extent that an officer was not directly involved, he witnessed the other officers do so.  *See* Pl.'s Opp'n at 11 (citing Am. Compl. ¶¶ 27, 29, 50); *see, e.g.*, *Robinson*, 264 F. Supp. 3d at 161–62 (allowing plaintiff to bring claims for excessive force under theories of both direct and bystander liability in Section 1983 case).  Counts 2, 4, and 6—the bystander liability companions to Counts 1, 3, and 5—thus also survive defendants' motion to dismiss.

### B.    First Amendment Facial and As Applied Challenge to the Panhandling Control Act (Counts 7 and 8)

Plaintiff next brings a facial and as-applied challenge to the Panhandling Control Act.  To succeed in a facial challenge, plaintiff "must establish 'that no set of circumstances exists under which the challenged [statute] would be valid or that the statute lacks any plainly legitimate sweep.'"  *Edwards v. District of Columbia*, 755 F.3d 996, 1001 (D.C. Cir. 2014) (citation omitted).  To prevail on an as-applied challenge, plaintiff must show that the statute is unconstitutional "as applied to [plaintiff's] particular speech activity."  *Id.*  "[T]he distinction between facial and as-applied challenges" "goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint."  *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010).  "The substantive rule of law is the same for both challenges."  *Edwards*, 755 F.3d at 1001.

The First Amendment prohibits the enactment of laws that "abridg[e] the freedom of speech."  U.S. Const. amend. I.  Evaluating whether a statute that regulates speech violates the First Amendment proceeds in three steps: (1) "determin[e] whether the First Amendment protects the speech at issue"; (2) "identify[] the nature of the forum"; and (3) "assess[] whether the District's justifications for restricting [the] speech satisfy the requisite standard."  *Mahoney v. Doe*, 642 F.3d 1112, 1116 (D.C. Cir. 2011) (citation omitted).  The parties agree, for the purposes of defendants' motion to dismiss, that "solicitation of charitable contributions" is protected by the First Amendment, and that the panhandling provision of the Act applies to public "streets" and "sidewalks," which are public forums.  *See* Defs.' Mem. at 14; Pl.'s Opp'n at 16–17.  The only question in dispute is what level of constitutional scrutiny applies, which turns on whether the statute is content-based or content-neutral.

16

"Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). The government may, in contrast, "impose content-neutral limitations on the duration and manner in which the public uses government property for expressive conduct." *Act Now to Stop War & End Racism Coal. & Muslim Am. Soc'y Freedom Found. v. District of Columbia*, 846 F.3d 391, 403 (D.C. Cir. 2017). These "[c]ontent-neutral time, place, and manner regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." *Id.* (citation omitted).

At the motion to dismiss stage, plaintiff has plausibly alleged a viable First Amendment claim. Plaintiff alleges that strict scrutiny applies because the Act is a content-based regulation insofar as it prohibits certain speech in the form of "immediate requests for money or other things of value," but does not criminalize other types of solicitation. Am. Compl. ¶ 80. To be sure, the D.C. Circuit in *ISKCON of Potomac, Inc. v. Kennedy*, 61 F.3d 949 (D.C. Cir. 1995), concluded that an agency regulation prohibiting "in-person request[s] for immediate payment" was not content-based, *id.* at 954–55. Since the *ISKCON* decision almost thirty years ago, however, the Supreme Court has decided *Reed v. Town of Gilbert*, 576 U.S. 155, and *City of Austin v. Reagan National Advertising of Austin, LLC*, 596 U.S. 61 (2022), which refined the contours of what makes a statute content based, and the D.C. Circuit has not yet considered the effects of *Reed* and *City of Austin* on *ISKCON*. Other courts that have addressed similar aggressive panhandling laws post-*Reed* have found these laws to be content based, even when their decisions pre-*Reed* concluded that these laws were content neutral. *See, e.g.*, *Norton v. City*

17

*of Springfield*, 806 F.3d 411, 412–13 (7th Cir. 2015) (recognizing that before *Reed*, the court had concluded that Springfield's anti-panhandling ordinance, which prohibits "oral request[s] for an immediate donation of money" in Springfield's "downtown historic district," was content neutral; but concluding, on rehearing after *Reed*, that "*Reed* requires a positive answer" to the question whether the ordinance is a form of content discrimination); *Thayer v. City of Worcester*, 144 F. Supp. 3d 218, 228, 233–34 (D. Mass. 2015) (considering an ordinance prohibiting "aggressive soliciting, begging, or panhandling," defined as asking for money or things of value, after the Supreme Court vacated, in light of *Reed*, the First Circuit's decision concluding that the ordinances were content neutral, *see* 576 U.S. 1048 (2015), *vacating and remanding* 755 F.3d 60 (1st Cir. 2014); and concluding that the ordinance draws distinctions "based on the message a speaker conveys" and is thus subject to strict scrutiny); *see also Rodgers v. Bryant*, 942 F.3d 451, 456 (8th Cir. 2019) (applying strict scrutiny to Arkansas's anti-loitering law because the law, which "applies only to those asking for charity or gifts, not those who are, for example, soliciting votes, seeking signatures for a petition, or selling something," is a content-based restriction). Although a decision on whether intermediate or strict scrutiny is not necessary at this stage, where material factual disputes still exist, strict scrutiny may apply to a review of the Act.

Should strict scrutiny apply, plaintiff alleges that the Act cannot survive because it does not further any compelling government interest and is not narrowly tailored. Am. Compl. ¶¶ 82–83. Specifically, the Amended Complaint contends that less restrictive alternatives are available, such as by enforcing already-existing provisions of the criminal code or enacting "other laws" that do not "target[] protected speech." *Id.* The question whether the Act is narrowly tailored is a mixed question of law and fact that is better left for resolution after a more fulsome record has been developed. *See, e.g.*, *Brown v. District of Columbia*, 390 F. Supp. 3d 114, 124–25 (D.D.C.

2019) (Brown Jackson, J.)[3]; *see also Billups v. City of Charleston*, 961 F.3d 673, 687–88 (4th Cir. 2020) (emphasizing the fact-intensiveness of the narrow-tailoring requirement and explaining that even when a statute is content-neutral, the government must present "actual evidence" showing that, "before enacting the speech-restricting law," it "seriously undertook to address the problem with less intrusive tools readily available to it" (citation omitted)).[4]

### C.   First Amendment Retaliation Claims (Counts 9 and 10)

The First Amendment "prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (citation omitted).  To establish retaliation, a plaintiff must demonstrate "(1) that he engaged in protected conduct[;] (2) that the government took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again; and (3) that there exists a causal link between the exercise of a constitutional right and the adverse action taken against him." *Doe v. District of Columbia*, 796 F.3d 96, 106 (D.C. Cir. 2015) (citation omitted). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured." *Nieves*, 139 S. Ct. at 1722.  The motive must be the "but-for" cause of the injury,

---

[3]       Contrary to plaintiff's contention, *Brown* does not stand for the proposition that resolving a facial challenge to a statute at the motion to dismiss stage is "improper" or "[in]appropriate."  Pl.'s Opp'n at 17.  Courts, in fact, regularly dismiss facial First Amendment challenges.  *See, e.g.*, *Tinius*, 77 F.4th at 699–703 (concluding that citywide temporary curfew was constitutionally valid time, place, and manner restriction, and rejecting plaintiffs' argument that district court erred in dismissing these claims because plaintiffs "have not explained how discovery could have been relevant to their facial challenges"); *Mahoney*, 642 F.3d at 1116–20 (affirming district court's dismissal of facial and as-applied First Amendment challenges to D.C. statute that prohibits the defacement of public and private property).  Here, as in *Brown*, "mixed question[s] of law and fact that must await resolution at a later stage in these proceedings" exist, 390 F. Supp. 3d at 124, and thus dismissal is not appropriate.

[4]       Even if strict scrutiny were not to apply, resolution of plaintiff's facial First Amendment challenge is better left for resolution after the record is further developed.  A determination that a statute is "facially content neutral does not end the First Amendment inquiry." *City of Austin*, 596 U.S. at 76.  "If there is evidence that an impermissible purpose or justification underpins a facially content-neutral restriction, for instance, that restriction may be content based." *Id.*  In any case, even when intermediate scrutiny applies, "a restriction on speech or expression must be narrowly tailored to serve a significant governmental interest." *Id.* (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)); *see also Green v. U.S. Dep't of Justice*, 54 F.4th 738, 746 (D.C. Cir. 2022).  As explained above, whether strict or intermediate scrutiny applies, plaintiff has done enough for his First Amendment challenges to the Act to survive defendants' motion to dismiss.

"meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* Defendants do not dispute that plaintiff's street performance is protected First Amendment activity, and that an arrest is a retaliatory action. *See* Defs.' Mem. at 25; Pl.'s Opp'n at 30–31. The only question is thus whether plaintiff's protected activity was the but-for cause of his arrest.

Recognizing that the causal inquiry in retaliatory arrest cases is complicated because "protected speech is often a wholly legitimate consideration for officers when deciding whether to make an arrest," the Supreme Court has counseled that when considering causation for a claim for retaliatory arrest, a court should look to whether probable cause for the arrest existed. *Nieves*, 139 S. Ct. at 1723–24 (citation omitted). "[B]ecause probable cause speaks to the objective reasonableness of an arrest, its absence will . . . generally provide weighty evidence that the officer's animus caused the arrest, whereas the presence of probable cause will suggest the opposite." *Id.* at 1724 (citation omitted). The absence of probable cause, however, does not end the inquiry; a plaintiff must then show that "the retaliation was a substantial or motivating factor behind the arrest, and, if that showing is made, the defendant can prevail only by showing that the arrest would have been initiated without respect to retaliation." *Id.* at 1725 (alteration in original accepted and citation omitted).

For the reasons discussed above, taking the allegations in the Amended Complaint as true, the Officer Defendants lacked probable cause to arrest plaintiff. As this Court has recognized, "direct evidence of retaliatory animus is not required, especially at this early stage of the proceedings and causation may be inferred when the retaliatory act follows close on the heels of the protected activity." *Goodwin v. District of Columbia*, 579 F. Supp. 3d 159, 174 (D.D.C. 2022) (alterations in original accepted and citation omitted). The Amended Complaint alleges

that the Officer Defendants seized, arrested, and searched plaintiff after he refused to "do

[Officer Mervilus] a favor" by moving to a different area to continue his street performance.

Am. Compl. ¶¶ 22–26; *see also id.* ¶¶ 27 ("In response to Mr. Narce's refusal to relocate, Officer

Defendants seized Mr. Narce against his will.  Multiple Officer Defendants grabbed Mr. Narce's

body."), 28 ("While continuing to restrain Mr. Nance in handcuffs, Officer Defendants searched

Mr. Narce's person and confiscated his personal property."), 102 ("But for Mr. Narce engaging

in protected speech by playing music on the sidewalk, Officer Defendants would not have taken

the retaliatory action of seizing and arresting him.").  Plaintiff has adequately stated the "causal

link" necessary for his First Amendment retaliation claim to proceed.

## IV.    CONCLUSION

For the foregoing reasons, taking the alleged facts in plaintiff's Amended Complaint as

true, all ten counts survive defendants' motion to dismiss.  Counts 1 through 6 turn on whether

the Officer Defendants had probable cause to arrest plaintiff.  As alleged, Officers Mervilus,

Dobbins, and Christian lacked probable cause to arrest plaintiff for aggressive panhandling,

when plaintiff was merely performing on a public sidewalk without impeding the entrance to the

Convention Center or otherwise engaging in an aggressive manner that interfered with

pedestrians.  Counts 7 and 8 plausibly allege viable facial and as-applied First Amendment

challenges to the Panhandling Control Act.  Plaintiff contends that this Act, which prohibits

"immediate requests for money or other things of value" but not other types of solicitation, is a

content-based regulation that cannot survive strict scrutiny because it does not further any

compelling government interest and is not narrowly tailored—inquiries that are best reserved for

when a more fulsome factual record is available.  Finally, Counts 9 and 10 state a plausible claim

to relief because plaintiff has adequately alleged a causal link between plaintiff's street

performance, and the Officer Defendants arrest of plaintiff without probable cause.  Accordingly,

defendants' Motion to Dismiss, ECF No. 18, is **DENIED**.

An Order consistent with this Memorandum Opinion will be filed contemporaneously.

Date:  October 30, 2023

_____
**BERYL A. HOWELL**
United States District Judge